UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 8:24-cr-269-MSS-UAM

RICHARD GLENN KANTWILL

**MEMORANDUM IN SUPPORT OF DETENTION PURSUANT TO DANGEROUSNESS UNDER 18 U.S.C.§ 3142**

The United States files this memorandum in support of detention. A violation of 18 U.S.C. § 875(c) is a crime of violence under the Bail Reform Act and this Court may consider whether Kantwill is a danger to society in a detention hearing. The facts of this case support Kantwill's detention pending trial.

BACKGROUND

On June 18, 2024, Kantwill was arrested pursuant to a federal indictment alleging violations of 18 U.S.C. § 875. The United States filed a detention memorandum seeking Kantwill be detained pending trial due to a dangerousness concern under 18 U.S.C. § 3142. Doc. 6. During his initial appearance, Kantwill argued that a consideration of dangerousness under 18 U.S.C. § 3142 was inappropriate and not legal due to a violation of 18 U.S.C. § 875 not being a "crime of violence" under the Bail Reform Act. Additionally, Kantwill argued that 18 U.S.C. § 875(c) is not divisible and "threat to kidnap" is a relevant element in determining whether 18 U.S.C. § 875 is a "crime of violence".

MEMORANDUM OF LAW

The Bail Reform Act of 1984 ("Bail Reform Act"), as amended, states in relevant part:

> "The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community ---
>
> > (1) Upon motion of the attorney for the Government, in a case that involves ---
> >
> > > (A) A crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed."

18 U.S.C. § 3142(f)(1)(A). "The Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes." *United States v. Salerno*, 481 U.S. 739, 747 (1987) (citing availability of detention hearings if case involves "crimes of violence, offenses for which the sentence is life imprisonment or death, serious drug offenses, or certain repeat offenders").

A charge of Interstate Threatening Communications in violation of 18 U.S.C. § 875(c) qualifies as a "crime of violence" under Section 3156(a)(4)(A) of the Act if it has among its elements the threatened use of physical force against another person.

Generally, Section 875(c) provides that "[w]hoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or

any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." "'Threat to injure' and 'threat to kidnap' are alternative elements for conviction under § 875(c)." *See United States v. Santoro*, 359 F. Supp 3d 122, 127 n.11 (D. Me. 2019). Section 875(c) is divisible and the modified categorical analysis should be used to determine whether § 875(c) is an offense that "has as an element … the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 3156(a)(4)(A). Here, the indictment against Kantwill charges threats to injure. Accordingly, the relevant element is the threat to injure and this Court does not need to consider the threat to kidnap element in determining whether § 875(c) is a crime of violence. *United States v. Dai*, 2023 WL 11016392, at *3 (N.D. NY, December 19, 2023); *see also Tomkins v. United States*, 2018 WL 1911805, at *6 (N.D. Ill. Apr. 23, 2018) (noting that § 876(b)'s analogous prohibition against mailed threats is divisible and concluding in that instance that the court need only consider the element of a threat to injure in determining whether the offense is a crime of violence).

The elements of a Section 875(c) violation are (1) the defendant knowingly transmitted a communication in interstate or foreign commerce; (2) the communication contained a threat to a particular person or group; and (3) the defendant transmitted the communication for the purpose of making a threat or with the recklessness that the communication would be viewed as a threat. *Counterman v. Colorado*, 600 U.S. 66, 143 S.Ct. 2106 (2023). Multiple federal courts have held that these elements include the threatened use of physical force, sufficient to qualify a

Section 875(c) violation as a "crime of violence" under the Bail Reform Act's elements clause. *See United States v. Curtin*, 78 F.4th 1299, 1307 (11th Cir. 2023) (defendant detained and denied release under the Bail Reform Act on the ground that he was a "danger to the community" due to his law violations of mailing a threatening communication, in violation of 18 U.S.C. § 876(c), and threatening a federal official, in violation of 18 U.S.C. § 1159(a)(1)(B)); *See also, United States v. Capriotti*, 2021 WL 229660 (N.D. Ill. January 22, 2021; *United States v. Cooper*, 2019 WL 4259454 (M.D. Tenn. September 9, 2019); *United States v. Pietila*, 2023 WL 4313162 (W.D. Mich. July 3, 2023); *United States v. Yassin*, 2016 WL 11687985 (W.D. MO, May 20, 2016); *United States v. Santoro*, 359 F. Supp. 3d 122, 127 (D. Me. 2019).

Threats, particularly those that are explicit, graphic, and repeated, harm people. *United States v. Capriotti*, 2021 WL 229660 at *5 (N.D. Ill. January 22, 2021). They terrorize people, induce fear, and affect the safety, security, and well-being of people. *Id.* "Pertinent definitions of threat all revolve around a single theme: an expression of an intent to inflict loss or harm." *United States v. Doggart*, 903 F.3d 50, 510 (6th Cir. 2018) (citing, among other authorities, the threat definitions contained in the *Oxford English Dictionary, Webster's Second, Webster's New International Dictionary*, and *Black's Law Dictionary*). "For if an individual makes a true threat to another, the government has the right, if not the duty, to 'protect[] individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the

threatened violence will occur…'" *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992)). *See also United States v. White*, 670 F.3d 498, 507 (4th Cir. 2012) ("true threats have the potential to cause such harm and imperil the security of individual citizens"); *United States v. Haddad*, No. 09 CR 115, 2014 WL 1493152 at *3 (N.D. Ill. April 16, 2014) ("True threats always fall outside the ambit of First Amendment protections, *see R.A.V.,* 505 U.S. at 388, because they inflict injury by their very utterance.") (internal quotes omitted). True threats "necessarily contribute" to "a climate of violence" that the community, along with the nation at large, has an important, ongoing interest in reducing. *United States v. Kelner*, 534 F.3d 1020, 1026 (2d Cir. 1976). Accordingly, courts have properly categorized violations of Section 875(c) as "crimes of violence" under the Bail Reform Act's elements clause.

Kantwill's violations of 18 U.S.C. § 875(c) along with considerations under 18 U.S.C. § 3142(g), support his continued detention. The evidence in this case is strong and includes information and evidence collected pursuant to search warrants and interviews. The Federal Bureau of Investigation (FBI) uncovered hundreds of messages sent by Kantwill, many of which were threatening in nature. Although investigators have not been able to confirm Kantwill's presence in the Middle District of Florida while sending most of the threats, IP address information associated with Kantwill proves he was in the Middle District of Florida when he sent the threats charged in the indictment. Regardless of the location from which Kantwill sent the threatening messages, the evidence shows Kantwill issued threats of violence to many different victims through various means of communication and

has persisted in this conduct despite law enforcement intervention.

On October 15, 2019, the FBI interviewed Kantwill as a result of a complaint regarding Kantwill's threatening messages. The FBI warned Kantwill that his messages were being perceived as threatening and he needed to cease such behavior. Despite the FBI's warning, Kantwill spent the next ten months sending threats to over 40 victims via social media and email.

The FBI determined Kantwill also sent various threats prior to their encounter with him in October 2019. All the threats Kantwill sent were recovered through search warrants of Kantwill's email address, Facebook, and Instagram accounts. Through investigative means, the FBI confirmed Kantwill's ownership over the email account, phone number, and social media accounts Kantwill used to send the threatening messages.

On September 5, 2019, Kantwill sent Victim 1 the following message[1] via email:

> You, sir, are a degenerate piece of s█ I read your article about The Great Donald Trump. It is so blatantly prejudiced that you don't even attempt to be impartial, you f█████████. You are gay...I can tell. F█you. I love what Trump does and where he stays. You ignorant f█ never cared about how the great ghetto c█Obama and how he got rich, but your going to get a hard-on about where Trump stays. So blatantly ignorant, and liberally immoral. God bless the Great President Trump and his family. F█you and yours. Hire extra security...you're gonna need it. I plan on f█ing you up...just for the fun of it.

Based on IP address information, Kantwill sent this message while he was in Tampa, Florida, within the Middle District of Florida.

---

[1] This message, which is charged in Count One of the indictment, has been sanitized via redactions.

On September 24, 2019, Kantwill texted[2] Victim 2 the following threat:

> Hi fake  Reverend... you should know...being the anti-Christian piece ▆shit that you are, that we are going to kill you. Torture first, then death.  You will deny Christ, just like Judas because you are a coward. Either way...prepare to die. You won't see Christ....because you as re an immoral degenerate

Based on IP address information, Kantwill sent this message while he was in Tampa, Florida, within the Middle District of Florida.

As a result of the threatening text message, Victim 2 installed nearly $4,500 worth of surveillance cameras due to his genuine fear of Kantwill.

On July 9, 2020, Kantwill sent Victim 3 the following message[3] via Instagram direct message:

**Text** Hey n▆▆▆...ever get tired of losing??? Cannot wait to shoot your ghetto a▆ in the street..you will die like every other n▆▆▆ piece of sh▆t...
**Author** dr.richardk (26731935484)

Based on IP address information, Kantwill sent this message while he was in Orlando, Florida, within the Middle District of Florida.

Additionally, in some of his Facebook messages Kantwill boasted about his weapons collection, indicating that he had a large collection that he would "NEVER surrender." He also sought to buy back "automatic and highly illegal" firearms from

---

[2] This text, which is charged in Count Two of the indictment, has been sanitized via redactions.
[3] This message, which has been charged in Count Three of the indictment, has been sanitized via redactions.

a different Facebook user. Kantwill referenced enjoying the violence of his military service, specifically stating "…and I loved creating widows and orphans."

As a result of Kantwill's threats, the FBI attempted to interview Kantwill in July of 2021. In response to being asked to meet for an interview, Kantwill stated he was not doing anything illegal and was justified in all of his actions. He blamed the Government, minorities, and other entities for being the reason he had been speaking out. Kantwill refused the requested interview and sent the FBI agent the following message:



The United States is aware of information indicating Kantwill transmitted a violent threat as recently as February 2024. According to an ongoing FBI

investigation, Kantwill threatened a politician by sending, via Facebook, the

following threat[4]:

> You are a degenerate c▊▊ and you are now the target of our own investigation. Take note because liberal ▊▊like you get raped in alleys, by really big black guys that serve our cause. So, you▊▊are going to get raped by at least 5 n▊▊, and do nothing. You are the number 1 target, you degenerate▊▊

"The nature and circumstances of this offense, in and of itself, concerns the

safety of the community." *United States v. Yassin*, 2016 WL 11687985 (W.D. Mo.

May 20, 2016). Kantwill's dissemination of threats to injure various individuals is

representative of actions that would constitute a danger to the community. His

threats that are the basis for the indictment are explicit and worrisome. The threats

promise injury, torture, and death. The threat to Victim 2 caused such fear that

Victim 2 installed thousands of dollars worth of surveillance equipment to better

protect himself from Kantwill.

Kantwill's character, including his history relating to drug or alcohol abuse

and his employment, further support detention in this matter. Kantwill self-reported

to pretrial services that he received an "Other Than Honorable" discharge from the

---

[4] This message has been sanitized via redactions.

9

United States Army. According to the Florida Department of Health disciplinary records, in 2007, Kantwill broke the terms of an agreement to voluntarily withdraw from practicing medicine after he relapsed on alcohol while in the midst of an alcohol addiction. Kantwill stopped attending the required group sessions and performed dental services during his relapse and was subsequently reprimanded and fined. Kantwill tested positive for marijuana in the drug screening conducted by pretrial services.

While Kantwill is a dentist in the community, it seems the positions he has held have been short-term. He has been with his current employer for approximately one and a half years and was with his previous employer approximately one and a half years. No additional previous employment information was provided to pretrial services. The United States has grave concern for the safety of the community due to Kantwill's employment. As a dentist, Kantwill holds a position of power over any individual that sits in his chair for dental services. Based on Kantwill's explicit and detailed threats of injury and death to politicians, celebrities, authors, and others who disagreed with his political beliefs or were a different race than Kantwill, the government fears what Kantwill may do if a patient were to express such contrasting beliefs or exist as a different race than Kantwill.

While Kantwill's only arrest was for a 2018 Leaving the Scene of an Accident charge that was subsequently dismissed, Kantwill committed the underlying offenses throughout a period of two years during which he continuously sent threatening messages to various individuals (at least 40 identified victims, including the threats

that do not have accompanying location information). Kantwill sent middle finger emojis to an FBI agent and texted "F*** YOU" to her. The United States is currently investigating Kantwill's actions throughout the past few years, as he recently sent a threat of rape to a politician via Facebook message. Kantwill committed ongoing offenses when continuing to send threatening communication over a multi-year period and showed a disregard for the law and law enforcement.

CONCLUSION

A dangerousness consideration is appropriate under 18 U.S.C. § 3142 for a violation of 18 U.S.C. § 875. Kantwill is a danger to the community. His threats are inherently dangerous. He has substance abuse issues and has displayed an inability to follow rules, as he violated the order from the dental governing board to cease practicing during his relapse and ignored instruction from the FBI to stop sending the threatening communications. Kantwill's reckless disregard for the safety of those around him, coupled with the 15 self-reported firearms he possesses and his Facebook messages detailing his enjoyment of violence and his desire to purchase illegal firearms, all support his detention based on his dangerousness.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:    /s/ *Abigail K. King*
       Abigail K. King
       Assistant United States Attorney
       Florida Bar No. 294963
       400 N. Tampa Street, Suite 3200
       Tampa, Florida 33602-4798
       Telephone:  (813) 274-6000
       Facsimile:   (813) 274-6358
       E-mail: Abigail.King@usdoj.gov

12

**U.S. v. Kantwill**                              **Case No. 8:24-cr-269-MSS-UAM**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 21, 2024, I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to the following:

Samuel Landes, FPD


/s/ *Abigail K. King*
Abigail K. King
Assistant United States Attorney
Florida Bar No. 294963
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:    (813) 274-6358
E-mail: Abigail.King@usdoj.gov