UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                    CASE NO. 8:24-cr-269-MSS-LSG

RICHARD GLENN KANTWILL

### UNITED STATES' SENTENCING MEMORANDUM

The Defendant, Richard Glenn Kantwill, sent over 100 threats of physical violence, including rape and murder, to dozens of public figures, including an election official, a religious persona, candidates for political office, members of the media, and celebrities, using multiple social media platforms, email, and text messages. The threats contained obscene and derogatory references regarding race, religious affiliation, gender, and sexual orientation. For these actions, the United States respectfully requests the Court sentence the Defendant to 33 months in prison, followed by three years of supervised release. This sentence is within the recommended sentencing guideline range and is sufficient but not greater than necessary to achieve the goals of sentencing and to provide adequate deterrence against future criminal conduct.

I.   **BACKGROUND**

   a. **Facts**

On October 1, 2019, the campaign of a candidate running to be the nominee for President of a major political party reported to local law enforcement that the candidate received numerous harassing and threatening messages from an individual

later identified as the Defendant. On October 13, 2019, a religious persona reported a threat from the Defendant to the Federal Bureau of Investigation ("FBI"), which formed the basis for Count Two of the Superseding Information.

As a result of the reports of the two above-detailed threats, the FBI opened an investigation and interviewed the Defendant regarding his threat activity on October 15, 2019. PSR ¶ 14. The Defendant admitted to sending the threats, denied any intention of carrying out the threats, and stated he was a "keyboard warrior" who was on a "verbal tirade." The FBI's contact with the Defendant did not deter his threatening activity. *Id*.

On February 20, 2020, the FBI received a report of new threats communicated by the Defendant on Instagram, directed at a self-described political strategist and commentator.

The FBI executed search warrants for the Defendant's Facebook, Instagram, and Google accounts. PSR ¶ 15. The review of those accounts shed light on the scope of the Defendant's threatening activities. Those records showed that the Defendant's criminal behavior began at least as early as September 2019 and continued even after his contact with the FBI on October 15, 2019. *Id*. On October 17, 2019, two days after being interviewed by the FBI, the Defendant sent the following threat via Facebook to a major cable news channel at 1:18 PM on a Thursday:

> He thg [Cable News Channel]..you degenerate pieces of shit...how the fuck are you scumbags doing now??? You stupid cunts..just for fun...tell corrupt gay [News

> Correspondent] we are going to fucking kill him and his family...any devils spawn of his do not deserve to live...The [Cable News Channel] better hire more security.....because, we Americans who love America and [Presidential Candidate] are going to kill you fucks...good luck living in peace. We will kidnap and kill his kids in captivity....every unkindly word he has said about [Presidential Candidate] will be another slash in his kids necks. FUCK YOU [Cable News Channel]!!!!

*Id*.

The following is an example of a threat the Defendant sent to a television personality on June 23, 2020:

> You went ahead and done did it! You stupid fuck…you just can't keep your mouth shut..guess what..I will make it easy for you. I am going to make you and your cunt wife watch,while we cut out little [television personality's minor son]'s heart and I'm going to show it to you while it is still beating..throw down time has come prick..

After learning the scope of the Defendant's threatening activity, which continued after the FBI's initial interview of the Defendant, and encompassed over 100 threats to 40 individuals, the FBI contacted the Defendant by phone on July 6, 2021, to arrange another interview. Doc. 57. During the phone conversation, the Defendant stated he was not doing anything illegal and his actions were justified. *Id*. The Defendant blamed the government, minorities, and others for his behavior. The Defendant remained undeterred even after this second contact from law enforcement.

On February 28, 2024, while the investigation into the above conduct was pending, the office for a state election official reported a threat of rape sent directly to

the state election official via Facebook[1] to the FBI. This threat was sent from the Facebook user "Richard Glenn," which was later identified as an alias account used by the Defendant after his primary account was suspended. PSR ¶ 13.

A search warrant for the Defendant's alias Facebook account uncovered additional threats spanning from November 2022 to April 2024, demonstrating that the only thing that stopped the Defendant from threatening individuals across the country with violence was his arrest on June 18, 2024. PSR ¶ 15.

A search warrant for the Defendant's phone in his possession at the time of his arrest revealed the Defendant also used an Instagram account, "iron.soldier74," to threaten a cable news personality, an actor, and a national radio show host. PSR ¶¶ 16-17.

### b. Procedural History

On June 11, 2024, a Federal Grand Jury seated in the Middle District of Florida returned a sealed three-count indictment charging the Defendant with violations of 18 U.S.C. § 875(c), related to interstate transmissions of a threat to injure. Doc. 1.

On June 18, 2024, the Defendant was arrested and ordered detained. On June 21, 2024, the Defendant's order of detention was reaffirmed. Docs. 6, 14, 15, 21.

On October 28, 2024, the Defendant filed a motion for reconsideration of the detention order. Doc. 39.

---

[1] This constitutes the offense conduct charged in Count Four of the Superseding Information.

On November 25, 2024, the Defendant pleaded guilty to a superseding information, charging him with four counts of transmitting interstate threats in violation of 18 U.S.C. § 875(c). Docs. 45-49. On December 17, 2024, the District Court accepted the Defendant's guilty plea. Doc. 54.

On January 6, 2025, the Defendant was released on conditions over the United States' objection. Doc. 61. On January 10, 2025, following a hearing on the United States' Motion for Stay, Review, and Revocation of Release Order, the Defendant was ordered detained pending sentencing. Doc. 64.

The Probation Office has determined the appropriate sentencing guideline range is 27-33 months, based on an adjusted total offense level of 18 and a criminal history category of I. PSR ¶ 105.

## II.   SECTION 3553(a) FACTORS

In sentencing the defendant, the Court must take into account the factors set forth in 18 U.S.C. § 3553(a), as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

      (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
          (I) issued by the Sentencing Commission ....; and
          (II) that, ... are in effect on the date the defendant is sentenced; …

  (5) any pertinent policy statement—
      (A) issued by the Sentencing Commission … and
      (B) that, ... is in effect on the date the defendant is sentenced.

  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

  (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### III.   SENTENCING ARGUMENT

The Defendant's repeated choice to threaten violence, to include threats of murder and rape, against persons in the public eye who he disagreed with, demonstrates a lack of self-control and respect not just for the individuals with views different from his but also for the rule of law in general, and justifies a guideline sentence of 33 months.

The Defendant's criminal conduct in this case, and the nature of the offense, is especially serious. Accordingly, it is particularly crucial that the sentence imposed "reflect[s] the seriousness of" the offenses and "afford[s] adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A), (B).

In order to properly evaluate the need for both specific and general deterrence, it is important to consider the context in which the Defendant sent his vulgar, disturbing, and extremely explicit threats. The Defendant targeted any person in the public eye that he disagreed with. He exploited differences in religion, race, gender

6

and sexual orientation in his targeted attacks, using language that he knew would inflict greater harm and fear in his targets than just the threat of violence alone. No one was safe from the Defendant's viciousness, including the children of his targets.

A sentence at the top of the recommended guidelines is further warranted due to the Defendant's demonstrated unwillingness to cease his criminal conduct even after repeated contacts from law enforcement. The Defendant continued to threaten others after the initial interview with the FBI in October 2019 and the phone contact from the FBI in July 2021. The *only* relief that the public has received from the Defendant's serial threats was his arrest and subsequent detention. The Defendant's criminal activity was both chronic and habitual, occurred over several years using multiple methods, was unable to be curtailed or disrupted by law enforcement contact, and suggests that the criminal behavior may resume upon release.

In addition to achieving the goal of specific deterrence, the volume, scope and duration of the Defendant's threat activity, as well as the serious nature of the Defendant's violent and malicious threats against public officials, celebrities, members of the media, and religious personas, cries out for a meaningful sentence of imprisonment to afford effective general deterrence. The public needs to recognize that this behavior will result in a serious sentence of imprisonment.

Unfortunately, more and more often, criticism of a political position or viewpoint crosses the First Amendment line and leads to true threats of violence as

defined by the Supreme Court.[2] The pervasive rise in threats creates a real risk that expressions of violence will become normalized. The new threat landscape has caused public officials to change the way they perform their duties, and the increase in threats has shown to have an impact on individuals' willingness to perform public service.[3] This problem, specifically the targeting of election officials like the victim in Count Four, became so pervasive, that in June of 2021, the Department of Justice established the Election Threats Task Force in response.[4]

The effective functioning of the United States requires a respect for and adherence to the rule of law. Without it, the government is unable to "establish Justice, insure domestic Tranquility," or "promote the general Welfare," – three of the six objectives outlined in the preamble to the U.S. Constitution.[5]

The requested sentence of 33 months is also appropriate in order to avoid unwarranted sentencing disparities. In this District, a defendant that sent multiple threats of violence to one public official, including threats to the public official's children, and who like the Defendant here had no criminal history, resulted in a sentence of 60 months after a conviction on one count of sending interstate threats.[6]

---

[2] *See Counterman v. Colorado*, 600 U.S. 66, 74 (2023) ("True threats are serious expressions conveying that a speaker means to commit an act of unlawful violence.") (cleaned up).

[3] *See, 'We'll See You at Your House': How Fear and Menace are Transforming Politics*, Danny Hakim, Ken Bensinger, and Eileen Sullivan, NEW YORK TIMES, May 19, 2024, available at: https://www.nytimes.com/2024/05/19/us/politics/political-violence.html.

[4] *See* https://www.justice.gov/voting/election-threats#ettf.

[5] U.S. CONST., Preamble.

[6] *United States v. Thorn*, M.D. Fl. Case No. 8:23-cr-361.

8

Thus, a sentence at the low end of the guidelines or a downward variance from the guidelines would result in an unwarranted sentence disparity between similarly situated defendants within the District.

Case 8:24-cr-00269-MSS-LSG    Document 68    Filed 02/19/25    Page 9 of 11 PageID 236

Thus, a sentence at the low end of the guidelines or a downward variance from the guidelines would result in an unwarranted sentence disparity between similarly situated defendants within the District.

9

## IV. CONCLUSION

For the foregoing reasons, a guideline sentence of 33 months followed by three years supervised release is sufficient, but not greater than necessary, to achieve the goals of sentencing, including the need to provide adequate deterrence against future criminal conduct.

        Respectfully submitted,

        SARA C. SWEENEY
        Acting United States Attorney

By:    /s/ *Abigail K. King*
        Abigail K. King
        Assistant United States Attorney
        Florida Bar No. 294963
        400 N. Tampa Street, Suite 3200
        Tampa, Florida 33602-4798
        Telephone:  (813) 274-6000
        Facsimile:    (813) 274-6358
        E-mail: Abigail.King@usdoj.gov

        ANTOINETTE T. BACON
        Supervisory Official
        Criminal Division
        United States Department of Justice

By:    /s/ *Aaron L. Jennen*
        Aaron L. Jennen
        Trial Attorney
        Public Integrity Section
        Arkansas Bar No. 2004156
        1301 New York Avenue NW
        Washington, DC 20530
        Telephone:  (202) 307-1945
        Email: Aaron.Jennen2@usdoj.gov

U.S. v. KANTWILL                              Case No. 8:24-CR-269-MSS-LSG

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Jorge Leon Chalela, Esq.

                                                  /s/ *Abigail K. King*
                                                  Abigail K. King
                                                  Assistant United States Attorney
                                                  Florida Bar No. 294963
                                                  400 N. Tampa Street, Suite 3200
                                                  Tampa, Florida 33602-4798
                                                  Telephone:   (813) 274-6000
                                                  Facsimile:   (813) 274-6358
                                                  E-mail: Abigail.King@usdoj.gov